IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LENA ALSTON,           )
                       )
        Plaintiff,     )
                       )    CIVIL ACTION
v.                     )
                       )    No. 17-1253-JWL
NANCY A. BERRYHILL,    )
Acting Commissioner of Social Security,  )
                       )
        Defendant.     )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.       Background**

Plaintiff argues that the Administrative Law Judge (ALJ) erred in weighing the medical source opinions regarding her mental impairments. She seeks an order "[d]irecting the Commissioner to pay [DIB]."  (Pl. Br. 13).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the arguments presented in Plaintiff's Brief and finds no error in the ALJ's decision.

## II.     Discussion

Plaintiff argues that the ALJ erred when according little weight regarding her mental limitations to the treating source opinion of Dr. Bruce. (Pl. Br. 8). She argues that both reasons given to discount Dr. Bruce's opinion are erroneous. Id. at 9. She asserts that the ALJ discounted Dr. Bruce's opinion based on an erroneous assumption that moderate limitations can never support a finding of disability. Id. She then explains how, in her view, the record evidence supports Dr. Bruce's opinion. Id. at 10-12. Finally, she argues that the opinions of the state agency psychologists and of Dr. Berg. support Dr. Bruce's opinion. Id. at 12.

The Commissioner argues that an ALJ need not find a contrary medical opinion before discounting a medical opinion, but that he determines RFC based upon all the evidence. (Comm'r Br. 10) (citing Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012), and Berumen v. Colvin, 640 F. App'x 763, 767 (10th Cir. 2016)). She argues that the ALJ provided good reasons to discount Dr. Bruce's opinion which are supported by the record evidence. Id. at 11-12. And, she argues that the ALJ properly discounted the opinions of the state agency psychologists and of Dr. Berg. Id. 13-14.

4

In her Reply Brief, Plaintiff notes that the ALJ found severe mental impairments at step two, and at step three found moderate limitations in social functioning and in concentration, persistence, and pace. (Reply 1). She argues that even though the ALJ did not find marked limitations, he did not give his RFC assessment the "careful consideration" required by Social Security Ruling (SSR) 85-15. Id. at 2 (quoting 1985 WL 56857 at *4). She argues that the ALJ's step three findings establish that her mental impairments are severe, that the ALJ did not object to the definition of "Moderately Limited" on Dr. Bruce's "Medical Source Statement – Mental" ("Impairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance."), and Dr. Bruce's opinion is consistent with her treatment record and Dr. Berg's examination report. Id.

### A. The Standard for Evaluating Medical Opinions and Assessing RFC

Medical opinions may not be ignored by an ALJ and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2018). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's

5

attention which tend to support or contradict the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

A treating physician is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). And, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, such opinions are generally given more weight than the opinions of doctors who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Watkins. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

6

RFC is an administrative assessment, based on all the evidence, of how a claimant's impairments and related symptoms affect her ability to perform work related activities. 20 C.F.R. § 404.1545(a); see also SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2018) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2018) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) ... may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including: medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2018).

### B. The ALJ's Findings

The ALJ found Plaintiff has numerous severe mental impairments: "depression with anxiety, major depressive disorder, mood disorder, post-traumatic stress disorder (PTSD), anxiety disorder, chronic alcoholism or alcohol abuse/dependence, and polysubstance abuse." (R. 12). In considering Plaintiff's mental impairments at step three he found that she has mild limitations in activities of daily living; moderate difficulties with both social functioning and concentration, persistence, and pace; and no

7

episodes of decompensation of extended duration. Id. at 13-14. He assessed her with a mental RFC "limited to simple work with occasional interaction with coworkers and occasional interaction with the general public." (R. 15).

Dr. Bruce provided two opinions, one in a "Medical Source Statement – Physical" (R. 516-18), and the other in a "Medical Source Statement – Mental." (R. 520-21). The ALJ summarized and weighed each of them, and the court reproduces both evaluations here:

> Karen Bruce, M.D., the claimant's long-time primary care provider, opined that the claimant could sit four hours in an 8-hour workday, stand 2 hours in an 8-hour workday, rarely reach, could not balance, crouch, crawl or climb, rarely stoop, occasionally twist, would need to change positions at will, elevate her legs for 20 minutes at a time, would be off task 20 percent of the day and miss two days a month (Ex. 10F). More recently in May 2016, Dr. Bruce noted the claimant was experiencing residual pain from a remote work injury, could miss up to several days of work a week and would experience increased back pain with bending or lifting over 5 pounds (Ex. 16F).
> 
> The undersigned assigns no weight to these opinions despite the treating relationship because these opinions are inconsistent with Dr. Bruce's own physical examinations. For instance, in June 2015, Dr. Bruce noted a normal physical examination, and in April 2016, she noted no tenderness to palpation of the claimant's lumbar spine and negative straight leg raise testing despite decreased range of motion with pain (Ex. 15F/2-4, 12-15). Moreover, these opinions are inconsistent with the claimant's wide-range of activities of daily living, including the ability to perform light household chores.

(R. 17).

> The claimant's primary care provider, Dr. Bruce, opined that the claimant would miss one day of work per month and would be off task 20 percent of the day, which would result in a finding of disability, even though she only has mild to moderate limitations in the ability to perform basic mental work related activities (Ex. 11F). The undersigned notes this opinion is internally inconsistent, and although Dr. Bruce was the claimant's primary

8

care provider and prescribed psychotropic medications, the minimal clinical
signs and findings noted in Dr. Bruce's treatment notes are inconsistent
with disabling mental impairment. Therefore, the undersigned assigns little
weight to this opinion.

(R. 20-21).

The ALJ accorded little weight to the opinions of the state agency psychological consultants because they "did not cite periods of sobriety to support their findings, and the longitudinal record, including updated primary care treatment notes, indicates that, despite ongoing substance use, the claimant's mental status examinations were not significantly abnormal when medication compliant." (R. 20). The ALJ also discounted the opinion of Dr. Berg, who had performed a consultative psychological examination of Plaintiff at the request of the state agency. (R. 21). He found Dr. Berg's opinions inconsistent with the results of Plaintiff's other mental status examinations, were based only on a one-time evaluation, and were inconsistent with Plaintiff's reported activities of daily living. Id.

> The ALJ explained how he had accommodated Plaintiff's mental impairments:
>
> A review of the limitations resulting from the claimant's impairments
> indicates that they are "severe," and require a reduction of the residual
> functional capacity. The undersigned has accommodated the claimant's
> moderate difficulties in maintaining concentration, persistence and pace by
> limiting her to simple work. Secondary to her moderate difficulties in
> social functioning, the claimant is limited to occasional interaction with
> coworkers and the general public. The claimant's assertions related to her
> inability to function due to mental deficits have been considered, but are
> not given great weight because the medical record does not support her
> allegations.

(R. 20).

### C. Analysis

The court finds substantial evidence supports the ALJ's evaluation of Dr. Bruce's opinion. As the ALJ found, the opinion is internally inconsistent. Dr. Bruce opined that Plaintiff would be off task because of her mental impairments only ten percent of the time (R. 520), but thereafter she opined that Plaintiff was "Moderately Limited" (had a 30% overall reduction in performance) in the ability to maintain attention and concentration for extended periods. (R. 521). Moreover, as the Commissioner points out, when considering all of Dr. Bruce's opinions which were signed on the same day, there are other internal consistencies. In her opinion regarding physical limitations, Dr. Bruce opined Plaintiff would be off task 20% of the time (R. 518), whereas in the opinion on mental limitations she opined Plaintiff would be off task only 10% of the time.[1] (R. 520). On the mental form, she opined Plaintiff would miss one day of work a month (R. 520), whereas on the physical form she opined Plaintiff would miss two days of work a month. (R. 518). On the mental form she opined Plaintiff was "Moderately Limited" (had a 30% overall reduction in performance) in several work-related mental abilities relating to concentration, persistence, pace, and social interaction (R. 520-21), whereas on the physical form she opined regarding work stress that Plaintiff was <u>capable</u> of low-stress work. (R. 518).

The record evidence also supports the ALJ's second reason--that "the minimal clinical signs and findings noted in Dr. Bruce's treatment notes are inconsistent with

---

[1] Plaintiff's argument that the ALJ misquoted Dr. Bruce's opinion on mental limitations ignores this inconsistency between the two opinions. (Pl. Br. 9) ("Dr. Bruce opined that Alston would be off task 10% of the workday, not 20% as alleged by the ALJ.").

10

disabling mental impairment." (R. 20-21). By way of example, on the day Dr. Bruce completed the opinion forms, she discussed Plaintiff's mental impairments:

> She has the following psychiatric-condition(s): depression and anxiety and chronic alcohol dependence. Duration of symptoms is: several years. Timing is continuous. Context related to this condition includes: +family history, personal stressors, substance use, and chronic pain. Patient is taking medications as noted in medication list. Aggravating factors include: medical illness and raising her 4 grandchildren preschool - gradeschool. Alleviating factors include: medication, counseling, family support, and has limited drinking to 1 drink/night. Patient is feeling that symptoms are stable and mostly normalized with occasional decline in mood, tearfulness and irritability. Current symptoms include: occasional depressed mood, crying, fatigue; anxiety well controlled. Symptoms denied include: suicidal ideation. Current symtoms [sic] affect daily functioning: occasionally interupts usual daily functioning.

(R. 555). Dr. Bruce performed a mental status examination at the visit and reported the results as "Orientation: grossely [sic] intact to person, place and time." (R. 558). As the ALJ found, this treatment note, and many others also describing occasional mental symptoms generally controlled, do not present the picture of an individual with disabling mental impairments and with a 30% overall reduction in performance on four key mental abilities as opined by Dr. Bruce. As the ALJ explained, "the clinical signs and findings, including an occasionally variable mood, mildly accelerated thought process, and polite and cooperative and polite [sic] demeanor despite loose thinking, pressured speech and sadness," support the RFC assessed. (R. 21). And, they also support the ALJ's evaluation of Dr. Bruce's opinion.

Although Plaintiff argues that the opinions of the state agency psychologists and of Dr. Berg support Dr. Bruce's opinion, and she acknowledges that the ALJ discounted those opinions, she does not argue error in that determination, and does not point to

11

specific error in the ALJ's determination to discount those opinions. As noted above, the ALJ provided specific reasons for discounting those opinions, the court notes that the record evidence supports those reasons, and Plaintiff points to no record evidence demonstrating otherwise.

To the extent Plaintiff points to other record evidence supporting Dr. Bruce's opinion, or supporting a finding of disability, she misses the point of judicial review of the Commissioner's decisions. The question in judicial review is whether substantial record evidence supports the Commissioner's decision, not whether the claimant can point to record evidence which supports a finding of disability. Usually the evidence in a Social Security disability case is equivocal and can be seen to support multiple views. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Finally, the court must address two related arguments by Plaintiff. First, she argues that the ALJ's rationale for discounting Dr. Bruce's opinions "relies on the [erroneous] assumption that moderate limitations cannot support a finding of disability." (Pl. Br. 9) (citing R. 20). Second, she argues that the ALJ did not object to the definition

of "Moderately Limited" in Dr. Bruce's opinion regarding mental limitations, thereby implying that the ALJ accepted it and was required to apply it.  Id.; (Reply 2).  While it is true that the ALJ stated that Dr. Bruce's opinions that Plaintiff would miss one day of work a month and would be off task 20 percent of the day "would result in a finding of disability, even though she only has mild to moderate limitations in the ability to perform basic mental work related activities," that statement does not equate to a finding that moderate limitations can <u>never</u> support a finding of disability.  Moreover, the ALJ did not rely on that statement as a basis to discount Dr. Bruce's opinions, and Plaintiff admitted as much when she listed the ALJ's reasons to discount the opinions.  (Pl. Br. 9).

Plaintiff argues that the ALJ's finding the evidence does not support disabling limitations is erroneous because she "established through vocational expert testimony, [that] the moderate limitations in Dr. Bruce's opinion would preclude competitive work." (Pl. Br. 12) (citing R. 56).  However, that is not precisely the picture presented by the hearing testimony.  Plaintiff's counsel did not ask the vocational expert how any particular <u>moderate</u> limitation would affect an individual's ability to perform work. Rather, he asked the expert to "assume the physical limitations here[,] but psychological there will be a 30 percent reduction in an individual's ability to perform activity within a schedule, maintain regular attendance and be punctual within customary tolerances, a 30 percent reduction in their ability to work in proximity by others [sic] without being distracted by them, as well as taking instructions and responding appropriately to supervisors.  Would that preclude competitive work?"  (R. 56).  The expert responded, "Any one of those."  Id.  The expert testified that if an individual had a 30 percent

13

reduction in any of these abilities, she would be unable to perform any competitive work, she did not testify that such an individual would be unable to perform any work if she had moderate limitations in any of the abilities presented.

Thus, it becomes clear that Plaintiff equates her own definition of "Moderately Limited" in Dr. Bruce's mental opinion form with that term as used by the Social Security Administration (SSA), perhaps because the ALJ did not expressly object to the definition in Dr. Bruce's form. However, "Moderately Limited" is a term of art within the SSA when rating the twenty mental abilities contained in the SSA's "Mental Residual Functional Capacity Assessment" form, Form SSA-4734-F4-SUP. The twenty mental abilities contained in that form are identical to the twenty mental abilities identified in the "Medical Source Statement – Mental" completed by Dr. Bruce. (R. 520-21). The SSA's Program Operations Manual System (POMS) explains that "Moderately Limited" means "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired," and notes that "[t]he degree and extent of the capacity or limitation must be described in narrative format." POMS DI 24510.063, Completion of Section I of SSA-4734-F4-SUP (Nov. 27, 1994) (emphases in original), available online at, http://policy.ssa.gov/poms.nsf/lnx/0424510063 (last visited Sept. 20, 2018).

Dr. Bruce is free to use any definition she desires (or (likely) counsel provided) when expressing her opinion, however, Plaintiff may not impose that definition on the ALJ instead of a term of art within the SSA, and with which the ALJ has worked for many years. The fact that the ALJ did not object to Dr. Bruce's (counsel's?) definition is unremarkable because he discounted the opinions on a different basis and did not need to

14

address the idiosyncratic definition.  Moreover, although Dr. Bruce's definition equates moderate limitation with a thirty percent reduction in performance, she did not expressly relate the degree or extent of Plaintiff's limitation for any of the mental abilities at issue. Recognizing that "moderately limited" has been a term of art within the SSA for many years, and with which the vocational expert is no doubt familiar, the court cannot (and in these circumstances, need not) know what her response would have been had Plaintiff's counsel asked about Plaintiff's ability to work if she had been moderately limited in the mental abilities at issue.

Plaintiff has shown no error in the ALJ's decision here.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated September 20, 2018, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**